IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEWAD NOORZAI,

        Plaintiff,

                                              3:15-CV-00045-PK

v.                                          FINDINGS AND
                                             RECOMMENDATION

DABELLA EXTERIORS, LLC,

        Defendant.

PAPAK, Magistrate Judge:

On January 9, 2015, plaintiff Hewad Noorzai filed an action for damages against defendant DaBella Exteriors, LLC, ("DaBella") pursuant to Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991. This court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

Now before the court is DaBella's motion (#6) to compel arbitration consistent with an arbitration agreement entered into by the parties at the start of Noorzai's employment with DaBella. I have considered the parties' motions, briefs, and the record. For the reasons set forth below, DaBella's motion should be granted and Noorzai should be directed to seek redress through the agreed-upon arbitral forum.

Page 1 - FINDINGS AND RECOMMENDATION

## FACTUAL BACKGROUND

According to the undisputed facts, DaBella hired Noorzai as a canvasser on or about January 2, 2013. Def.'s Mot. to Compel Arb. 2. DaBella provides home improvement goods and services to residential customers in Oregon and Washington. *Id*.

DaBella provided Noorzai with a then-current version of its Employee Handbook (the "Handbook") on his hiring date or shortly thereafter. Def's Mot. 2. The Handbook describes DaBella's general employment policies, procedures, and expectations. Def's Mot. 9. Section 2.1 of the Handbook defines its scope and effect as follows:

> **This Handbook is not an employment contract and is not intended to create contractual obligations of any kind.** Employment with the Company is "at will." This means that either the employee or the Company may terminate the employment relationship at any time, with or without cause or prior notice.

Def. Ex. A at 10. Section 8.4 of the Handbook, titled "Arbitration of Disputes," sets out DaBella's policy for resolving grievances that arise during the employee-employer relationship. Section 8.4 provides as follows:

> DaBella believes that the great majority of workplace disputes can be resolved through the informal Open Door process described elsewhere in this Handbook. However, the Company also recognizes that from time to time there may arise an issue between an employee and the Company that cannot be resolved cooperatively. **In such a situation, DaBella and the employee agree to choose arbitration, rather than litigation, to address the unresolved grievance.** The Company policy to arbitrate disputes is grounded in our belief that this resolution process may be more cost-effective and expedient for both parties than litigation. By agreeing to arbitrate a dispute you may have with DaBella, or that the Company may have with you, both parties are giving up any constitutional right to have a dispute decided in a court of law before a jury.
> **This agreement to arbitrate includes any and all disputes, claims or controversies arising under or relating to (i) the relationships resulting from your employment with the Company; (ii) matters arising from your employment at DaBella, including, but not limited to, termination, claims of race, age, gender or disability discrimination, sexual harassment or civil rights violations; or (iii) the validity of any provision of this Handbook, that is**

> not resolved to the mutual satisfaction of both the Company and the employee.
> **The arbitration shall be initiated and conducted in accordance with and pursuant to the then prevailing rules and procedures of the American Arbitration Association, to be held and arbitrated before a single arbitrator in the county you resided in during your term of employment with the Company.** The findings of the arbitrator shall be final and binding on both parties, and may include an award of costs and reasonable legal fees.
> **Either DaBella or the employee may bring an action in any court having jurisdiction to either compel arbitration under this Policy, to obtain preliminary relief in support of a claim to be decided by arbitration, or to enter or enforce an arbitration award.**

Def. Ex. A at 50 (emphasis added). The last page of the Handbook contains an "Acknowledgment and Receipt" form (the "Acknowledgment") that all new employees must sign, date, and return to DaBella's Human Resources Department as an express condition of employment. *Id.* The Acknowledgment references Section 8.4 as governing disputes between DaBella and its employees. It states in relevant part as follows:

> In the event of a dispute arising out of any aspect of my employment relationship with the Company (including, but not limited to, any claims under tort or contract theories, whether based on common law or otherwise, and all claims or those arising under any federal, state, or local laws governing terms or conditions of employment), the Company and I will both exercise our best efforts toward a resolution by mutual agreement.
> However, **in the event that such agreement cannot be reached, in accordance with Company policy, and as condition of employment, I agree that the dispute shall be settled using the arbitration procedure outlined in Section 8.4 of the Handbook.**
> By signing below, I agree to the foregoing terms and conditions of my employment with DaBella, and acknowledge the Company's expectation that I conduct myself in accordance with the policies and procedures set forth in the Handbook.

Def. Ex. A at 51 (emphasis added). Noorzai executed the Acknowledgment on February 22, 2013. Def's Mot. 4. On April 15, 2014, Noorzai voluntarily resigned his employment with DaBella. *Id.* Noorzai initiated this lawsuit on January 9, 2015. *Id.*

Page 3 - FINDINGS AND RECOMMENDATION

On or about February 17, 2015, DaBella's general counsel contacted Noorzai's counsel via e-mail to advise him of the existence of the arbitration agreement. Def's Mot. 4. After not receiving a response, DaBella's counsel sent a follow-up letter to Noorzai's counsel on March 9, 2015, accompanied by additional copies of the Acknowledgment and the relevant portions of the Handbook. Def's Mot. 5. Thereafter, Noorzai's counsel advised DaBella's general counsel that he did not believe there was an enforceable agreement to arbitrate and refused to voluntarily dismiss the Complaint. *Id.* DaBella then filed the instant motion to compel arbitration. *Id.*

## LEGAL STANDARD

The parties disagree as to whether the arbitration agreement is governed by state or federal law. As the Ninth Circuit explained in *Johnson v. Gruma Corp.*, 614 F.3d 1062 (9th Cir. 2010):

> The F[ederal] A[rbitration] A[ct], while it does not itself create independent federal jurisdiction, creates a body of federal substantive law establishing and regulating arbitration agreements that come within the FAA's purview. When an agreement falls within the purview of the FAA, there is a strong default presumption that the FAA, not state law, supplies the rules for arbitration. To overcome that presumption, parties to an arbitration agreement must evidence a "clear intent" to incorporate state law rules for arbitration.

*Johnson*, 614 F.3d at 1066 (citations, internal quotation marks, and internal modifications omitted).

The FAA generally governs arbitration provisions of employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001). Where the FAA governs, "state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," but courts cannot "invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996).

Page 4 - FINDINGS AND RECOMMENDATION

State law controls where the FAA does not apply. *See Howard Fields & Assocs. v. Grand Wailea Co.*, 848 F.Supp. 890 (D. Hawaii 1993). Oregon state law requires that employers provide written arbitration agreement to its employees no less than 72 hours prior to his first day of work. ORS 36.620(5)(a).

## ANALYSIS

Defendant moves to compel arbitration on the grounds that the parties entered into a valid arbitration agreement when Noorzai returned the signed Acknowledgment form and accepted employment from DaBella. Noorzai counters that: (1) there was no contract; (2) he did not knowingly waive his right to a judicial forum; (3) the agreement is substantively and procedurally unconscionable.

### I.    Existence of a Contract to Arbitrate

Noorzai argues that the FAA does not apply and neither the Handbook nor Acknowledgment are valid contracts because of language in Section 2.1 of the Handbook that disclaims any binding effect. Plaintiff responds that Section 2.1 only clarifies the duration and "at will" nature of Noorzai's employment and does not implicate the arbitration policy in Section 8.4. Additionally, DaBella argues that the Acknowledgment constitutes a separate contractual agreement that only incorporates the arbitration policy from Section 8.4 of the Handbook.

#### A.    The Employee Handbook

Noorzai asserts that language in Section 2.1 of the Handbook precludes its binding effect. The relevant provision reads:

> **This Handbook is not an employment contract and is not intended to create contractual obligations of any kind.** Employment with the Company is "at will." This means that either the employee or the Company may terminate the employment relationship at any time, with or without cause or prior notice.

Page 5 - FINDINGS AND RECOMMENDATION

Def. Ex. A at 10 (emphasis added). DaBella would construe this provision to apply only to Section 2.1 of the Handbook. However, the text of this provision plainly applies to the entirety of "[t]his handbook" and disclaims the creation of contractual obligations "of *any kind.*" Def. Ex. A at 10 (emphasis added). An employee could not read this section and reasonably believe the Handbook created a contractual relationship between herself and DaBella. Under Oregon law, an unambiguous disclaimer of contractual obligations is sufficient to make an employee handbook nonbinding. *Mobley v. Manheim Servs. Corp.*, 133 Or. App. 89, 93 (1995). Accordingly, the Handbook itself does not constitute a contract binding the parties to the arbitration policy found in Section 8.4.

### B. The Acknowledgment and Receipt Form

DaBella argues that, even if the Handbook is not binding, the signed Acknowledgment form constitutes a contract. A contract is formed when there is an offer made, an acceptance of that offer, and an exchange of consideration. *See Homestyle Direct, LLC v. DHS*, 354 Or. 253, 262 (2013). Consideration is defined as "some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Homestyle Direct, LLC v. Dep't of Human Servs.*, 354 Or. 253, 262 (2013), *citing Shelley v. Portland Tug & Barge Co.*, 158 Or. 377, 387 (1938).

Here, the Acknowledgment states as follows:

> In the event of a dispute arising out of any aspect of my employment relationship with the Company (including, but not limited to, any claims under tort or contract theories, whether based on common law or otherwise, and all claims or those arising under any federal, state, or local laws governing terms or conditions of employment), the Company and I will both exercise our best efforts toward a resolution by mutual agreement. However, in the event that such agreement cannot be reached, in accordance with Company policy, and as condition of employment, I

Page 6 - FINDINGS AND RECOMMENDATION

>agree that the dispute shall be settled using the arbitration procedure outlined in Section 8.4 of the Handbook.
>By signing below, I agree to the foregoing terms and conditions of my employment with DaBella, and acknowledge the Company's expectation that I conduct myself in accordance with the policies and procedures set forth in the Handbook.

Def. Ex. A at 51. This language makes an express offer of continued employment contingent upon assent to the arbitration policy in Section 8.4. The record shows that Noorzai signed the Acknowledgment and returned it to DaBella. Def. Mot. at 4. It is a general rule of contract law that a signature is sufficient to signify assent when it is intentionally placed on a contract. *Pio v. John B. Gilliland Const.*, 276 Or. 975, 980 (1976).

The Acknowledgment is supported by consideration because it encompasses claims brought by either Noorzai or DaBella. Reciprocal forbearance of the right to a judicial forum is valid consideration under Oregon law. *Melton v. Phillip Morris Inc.*, 71 F. App'x 701, 703 (9th Cir. 2003). Additionally, under Oregon law, a promise of continued employment for an "at will" employee is valid consideration when the contract is expressly or impliedly made a condition of employment. *Yartzoff v. Democrat-Herald Pub. Co.*, 281 Or. 651, 655 (1978); *McCombs v. McClelland*, 223 Or. 475, 483 (1960). Therefore, the Acknowledgment has all the necessary components of a contract.

## II.     Knowing Waiver of Right to Judicial Forum

Noorzai argues that he cannot be bound by the signed Acknowledgment because he never knowingly waived his right to a judicial forum. The Ninth Circuit has held that "a knowing agreement to arbitrate disputes, and waive a judicial determination, is required under federal civil rights statutes and parallel state statutes." *Lindgren v. Public Storage*, 290 Fed. Appx. 971, 972 (9th Cir. 2008), *citing Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997).

Page 7 - FINDINGS AND RECOMMENDATION

The court explained:

> An employee has not knowingly agreed to arbitrate when the forms he signs fail to notify him that an employee handbook contains an arbitration agreement, or that his signature on the forms requires him to surrender his statutory right to a judicial forum for his civil rights claims. Even though an employee acknowledges receipt of an employee handbook and agrees to read and understand the contents of it, he has not knowingly waived his right to a judicial determination.

*Id.* Noorzai contends that the Acknowledgment did not inform him that he was waiving his right to a judicial forum. Generally, a valid arbitration agreement found in an employee handbook "requires little more than an acknowledgment which includes language that refers to binding arbitration and notifies the employee that he or she is precluded from bringing a lawsuit for employment claims." *Twilleager v. RDO Vermeer, LLC*, WL 1637469, (D. Or. 2011).

Here, the Acknowledgment suffers from a deficiency similar to the valid acknowledgment in *Twilleager* and the rejected acknowledgment in *Kummetz* because it incorporates arbitration procedures from an employee handbook that DaBella also expressly denies constitutes a contract. *Compare* Def. Ex. A at 10 ("This Handbook is not an employment contract and is not intended to create contractual obligations of any kind.") *with Twilleager*, WL 1637469 at 6 ("Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document[.]") *and Kummetz v. Tech Mold*, 152 F.3d 1153, ("I also understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee."). However, similar to the enforceable acknowledgement in *Twilleager*, and unlike the ineffective agreement in *Kummetz*, the Acknowledgment here contains a clause that attempts to reiterate its binding effect. *Compare* Def. Ex. A at 51 ("in accordance with Company policy, and as a condition of employment, I agree that [disputes] shall be settled using the arbitration procedure outlined in Section 8.4 of this handbook") *with Twilleager*, WL 1637469 at 6 ("'certain employment-related

Page 8 - FINDINGS AND RECOMMENDATION

disputes' [will] be resolved by 'mandatory arbitration,' and . . . 'the parties shall be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement.'"). Here, DaBella's Acknowledgment does inform employees that their claims are subject to arbitration outside of a judicial forum. The Acknowledgement additionally incorporates language expressly confirming waiver of any right to litigate from Section 8.4 itself.[1] Therefore, Noorzai was given adequate notice that he was assenting to arbitration.

Plaintiff also contends that the agreement is deficient because it does not specifically mention civil rights claims. On the contrary, however, Section 8.4 of the Handbook states:

> **This agreement to arbitrate includes any and all disputes**, claims or controversies arising under or relating to (i) the relationships resulting from your employment with [DaBella]; (ii) matters arising from your employment at DaBella, including, but not limited to, termination, claims of race, age, gender or **disability discrimination**, sexual harassment or **civil rights violations**. . .

Def. Ex. A at 50 (emphasis added). This language from Section 8.4 is incorporated by reference into the Acknowledgment. "It is well established that when a written instrument refers in specific terms to another writing, the other writing is part of the contract." *Northwestern Pac. Indem. Co. v. Junction City Water Control Dist.*, 295 Ore. 553, 558 (1983), *citing Cerino v. Oregon Physicians' Service*, 202 Ore. 474 (1954). A person who has voluntarily signed a document is presumed to be familiar with its contents. *Pokorny v. Williams*, 199 Or. 17, 33, (1953).

---

[1] "By agreeing to arbitrate a dispute you may have with DaBella, or that the Company may have with you, both parties are giving up any constitutional right to have a dispute decided in a court of law before a jury." Def. Ex. A at 50.

Page 9 - FINDINGS AND RECOMMENDATION

### III.  Substantive and Procedural Unconscionability

Noorzai argues that the arbitration agreement is unenforceable because it is unconscionable. The FAA provides that the enforceability of an arbitration clause can be challenged "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. Accordingly, even if Noorzai is correct that the FAA governs the arbitration agreement, this court must look to Oregon law to resolve the question of unconscionability. *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or.App 610, 613 (2007), *citing Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or.App. 533, 560, (2007). Unconscionability may be procedural or substantive. *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014). Unlike some other jurisdictions, Oregon law does not require both procedural and substantive unconscionability; however, "[t]he substantive fairness of the challenged terms is always an essential issue." *Vasquez-Lopez*, 210 Or.App. at 567 (*quoting Carey v. Lincoln Loan Co.*, 203 Or.App. 422, 423 (2005)).

#### A.  Substantive Unconscionability

Noorzai argues that the arbitration agreement is substantively unconscionable because: (1) DaBella retained the right to unilaterally amend, supersede, or eliminate any part of the Handbook; (2) DaBella failed to adequately inform Noorzai of its legal consequences; (3) DaBella conditioned his continued employment on its acceptance.

Substantive unconscionability generally refers to the terms of the contract, rather than the circumstances of its formation, and focuses on whether the terms are in conflict with the public interest or public policy. *Bagley*, 356 Or. at 556. "An arbitration agreement is unenforceable under the FAA if it denies a litigant the opportunity to vindicate his or her rights in the arbitral

Page 10 - FINDINGS AND RECOMMENDATION

forum." *Vasquez-Lopez*, 210 Or.App. at 573, *citing Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). However, Oregon courts are very reluctant to disturb agreements on the basis of substantive unconscionability. Under Oregon law, like federal law, courts resolve disputes in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or.App 137, 152 (2010) (internal quotation marks omitted).

Here, I find that there is such an interpretation. First, Noorzai asserts that language in the Acknowledgment grants DaBella the unilateral right to supersede, modify, or eliminate any of its terms, presumably including the Section 8.4 arbitration policy. The relevant part of the Acknowledgment states: "I understand that, except for the 'at will' nature of my employment, any and all Company policies and procedures described herein may be superseded, modified, or eliminated from time to time. Any such changes will be communicated to employees through official written notices." Def. Ex. A at 51. DaBella's reservation of the right to modify the "policies and procedures described herein" refers to the general policies and procedures found in the Handbook, which both parties concede is not a contract. As discussed above, the Acknowledgment is a valid contract supported by consideration. Accordingly, while DaBella is free to change the policies in its Handbook, the Acknowledgment remains controlling with respect to arbitration. Therefore, the Acknowledgment's terms—which incorporate the Section 8.4 arbitration agreement as it existed at the time—bind both parties, changes to the Handbook notwithstanding.

Additionally, under Oregon law, courts look to the *effect* of a one-sided clause in an

Page 11 - FINDINGS AND RECOMMENDATION

arbitration agreement and not its hypothetical *application.* *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 623 (2007) (emphasis in original). Here, there is no evidence in the record to suggest that DaBella ever exercised this provision and attempted to modify the arbitration agreement.

Next, Noorzai argues that the Acknowledgment is substantively unconscionable because he was inadequately informed of its legal consequences. This argument fails for the same reasons, explained above, that I find he knowingly waived his right to a judicial forum.

Lastly, Noorzai contends that the Acknowledgment is substantively unconscionable because acceptance was made a condition of his employment. This argument is not persuasive because, as both parties agree, Noorzai was at all times an "at will" employee. Therefore, he had no reasonable expectation of, nor contractual right to, indefinite ongoing employment. Furthermore, as defendants note in their reply brief, Noorzai had the option to seek employment from any number of businesses that do not require arbitration agreements as a condition of employment. Def. Reply Br. at 6.

**B.      Procedural Unconscionability**

Procedural unconscionability focuses on two factors: oppression and surprise. *Bagley*, 356 Or. at 555. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms." *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or.App. at 566 (internal quotation marks omitted) (*quoting ACORN v. Household Intern., Inc.*, 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002)).

### 1. Oppression Factor

Noorzai argues that the arbitration agreement is oppressive and therefore procedurally unconscionable because: (1) it is a contract of adhesion; (2) it was a mandatory condition of his continued employment; (3) its terms allowed DaBella to unilaterally modify, supersede, or eliminate any part of the Handbook. Pl. Br. at 7.

First, Noorzai argues that the entire agreement to arbitrate is void because it is a contract of adhesion. A contract of adhesion is "an agreement between two parties of unequal bargaining power, offered to the weaker party on a 'take-it-or-leave-it' basis." *Sprague v. Quality Restaurants Nw., Inc.*, 213 Or.App. 521, 526 (2007), *citing Reeves v. Chem Industrial Co.* 262 Or. 95, 101 (1972). Contracts of adhesion can be deemed procedurally unconscionable when they contain unfair or unreasonable terms. *See Sprague*, 213 Or.App. at 526 (finding contract of adhesion evidence of procedural unconscionability).

Typically, oppression can be evidenced by a take-it-or-leave it bargaining stance or the fact that a contract involves a consumer transaction rather than a commercial bargain, accompanied by disparate bargaining power. *Bagley*, 356 Or. at 555. Oregon courts have held, however, that the adhesive nature of a contract alone is insufficient to render an agreement procedurally unconscionable. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1094 (9th Cir. 2009). Here, there is nothing in the record to suggest that the adhesive nature of the contract is an unconscionable deviation from the normal course of business. Rather, "the agreement was no more unconscionable than the typical employment, consumer, or service contracts that are a common feature of contemporary commercial life and that Oregonians sign (and Oregon courts enforce) as a matter of course." *Sprague v. Quality Restaurants Northwest, Inc.*, 213 Or.App. 521, 526

(2007).

Noorzai also contends that the agreement is oppressive because his continued employment was conditioned upon its acceptance. This is insufficient proof of "oppression", however, for the same reasons I find it does not make the agreement substantively unconscionable.

### 2.    Surprise Factor

Noorzai next argues that the Acknowledgment is procedurally unconscionable because of the surprise factor for several reasons: (1) its title does not refer to the arbitration agreement; (2) it fails to draw the reader's attention to the arbitration language; (3) it merely references, but does not include, the actual language of the arbitration policy. Pl. Br. at 7. Surprise is generally evidenced by terms that are hidden or obscure. *Bagley*, 356 Or. at 555.

Noorzai first contends that the title and body of the Acknowledgment unfairly obscure the terms of the arbitration agreement. The Oregon Court of Appeals has held that an arbitration agreement was not procedurally unconscionable where: (1) the arbitration clause was not hidden; (2) plaintiff was given time to review the documents before agreeing to their terms. *Motsinger*, 211 Or.App at 513. Here, the arbitration clause was not hidden because "if the acknowledgment specifically directs the employee's attention to the arbitration clause in the handbook, then the arbitration agreement can be given effect." *Kummetz v. Tech Mold, Inc.*, F.3d 1153 at 1155-56. Noorzai was also given time to read the documents and ask questions prior to signing. Def. Reply Br. at 9.

Noorzai relies heavily on this court's decision in *Twilleager* to support his position. *Twilleager* is too factually distinct from the instant case, however, for its holding to be controlling. First, the court in *Twilleager* determined that the Acknowledgement's title was misleading because

Page 14 - FINDINGS AND RECOMMENDATION

it did not mention the arbitration agreement and included a subtitle directing attention to its email and voicemail usage policy. *Twilleager,* WL 1637469, at 7. In contrast, while here the Acknowledgment's title is perhaps unsatisfactorily vague, it is not similarly misleading because it does not draw attention to a part of the Acknowledgment that is not the arbitration agreement. Second, the court in *Twilleager* took issue with the misleading typeface in the Acknowledgement because it highlighted only the title of the document and the subtitle referring to part of the Acknowledgment irrelevant to the arbitration agreement. *Id.* Here, the typeface in the Acknowledgment is uniform, but it is not misleading because differentiated typeface is not used to distract or mislead the reader. Given Noorzai's ample opportunity to read the document ask questions, the terms of the Acknowledgment were not in any meaningful way "hidden." The preceding analysis further demonstrates significant material differences between the DaBella's Acknowledgment form and the acknowledgment challenged in *Twilleager*. *See supra* Section II. Accordingly, Noorzai has not carried his burden of proving this Acknowledgment's format is an example of unconscionable "surprise."

Noorzai's claim that Acknowledgement's incorporation, rather than recitation, of Section 8.4 establishes procedurally unconscionability also fails because it is out of step with Oregon case law. *See supra* Section II. Here, Section 8.4 is expressly incorporated in the Acknowledgment. Additionally, as defendants note in their reply brief, Section 8.4 is the *only* section of the Handbook that is incorporated by reference in the Acknowledgment. Def. Reply Br. at 3.

## CONCLUSION

For the reasons set forth above, DaBella's motion (#6) to compel arbitration should be granted. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 24th day of July, 2015.

_____
Honorable Paul Papak
United States Magistrate Judge